Gail D. CONNELL

v.

AETNA LIFE & CASUALTY
COMPANY.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1981.

Decided Nov. 2, 1981.

Hale & Hamlin, Barry K. Mills (orally), Blue Hill, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), George C. Schelling, Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

On May 16, 1978, Malcolm Connell, plaintiff's husband, was killed in the crash of an airplane operated by his employer, Bar Harbor Airlines. He was survived by plaintiff and two minor children, who were paid compensation benefits by defendant Aetna Life & Casualty Co., the compensation carrier.

As a result of negotiations, plaintiff, individually and on behalf of the two minor children, entered into a lump sum settlement, approved by the Workers' Compensation Commission, with Bar Harbor Airlines and Aetna. For a consideration of $239,000 plaintiff executed, for herself and the children, a release, dated November 2, 1979, to Bar Harbor Airlines, "its successors and assigns, and all other persons, firms or corporations" from any claims that she or the children had, or that might thereafter accrue, on account of Mr. Connell's death. The release, drafted by Aetna and signed by the plaintiff, contained no provision relating to lien or subrogation rights afforded to the employer by section 68 of the Workers' Compensation Act.[1] That section provides, among other things, that if the compensation beneficiary recovers damages from a third person, the employer or compensation insurer is entitled to a lien on any proceeds recovered, equal to compensation benefits paid less a proportionate share of the costs of recovery. Section 68 also provides, alternatively, for subrogation of the carrier to the rights of the employee to the extent the carrier has paid him compensation. See *Liberty Mutual Ins. Co. v. Weeks*, Me., 404 A.2d 1006 (1979).

Beginning in April, 1980, plaintiff's attorney and Aetna's claims representative began an exchange of telephone calls and correspondence about a possible products liability action to be brought against the manufacturer of the plane in which Mr. Connell was killed. Aetna's potential lien and subrogation rights under section 68 were discussed for the first time. Declining to exercise any right of subrogation, Aetna

said that it would opt to rely solely on its asserted lien rights against any recovery the plaintiff might obtain.

On May 14, 1980, plaintiff began a products liability action against the manufacturers of the airplane and its component parts in United States District Court, District of Maine. About a month later she filed the present declaratory judgment action in Superior Court pursuant to 14 M.R.S.A. ch. 707 and M.R.Civ.P. 57, seeking a judgment declaring that defendant has no lien against any recovery plaintiff may obtain in her action in federal court. Her theory is that by entering into the settlement agreement described above and accepting her release, Aetna gave up any right to a lien under section 68.

Both parties filed motions for summary judgment submitting supporting affidavits. Defendant submitted the affidavits of its attorney and claims representative stating that they had been aware of Aetna's lien rights and that it had not been their intention to waive those rights by entering into a lump sum settlement. Plaintiff's affidavit stated that she had not been apprised of any lien rights defendant might have and that Aetna's intention to reserve those rights had not been communicated to her before she signed the lump sum petitions and the release.[2]

The presiding justice denied plaintiff's motion and granted defendant's motion for summary judgment, declaring that the release signed by the plaintiff and her approved petitions for lump sum settlement did not give rise to a waiver by Aetna of its lien rights under section 68. On plaintiff's appeal, we affirm the judgment.

## I.

■ It was not inappropriate for the plaintiff in this case to seek relief in the form of a declaratory judgment. Although the question whether Aetna still has a lien may never arise directly because plaintiff

---

1. 39 M.R.S.A. § 68 (1978).

2. Plaintiff signed one petition on her own behalf and a petition for each of the two children.

may lose in her action in federal court, she and Aetna have clearly adverse interests, and a real controversy exists calling for the vigorous presentation of those interests. *Shapiro Bros. Shoe Co. v. Lewiston-Auburn Shoeworkers Protective Ass'n*, Me., 320 A.2d 247, 251 n. 7 (1974). Although a court ordinarily declines to grant a declaratory judgment on a matter that is future, contingent and uncertain, *see, e. g., Mutual Trust Life Ins. Co. v. Wemyss*, 309 F.Supp. 1221 (D.Me.1970), if circumstances exist to satisfy the court that the controversy should be decided at once, declaratory relief may be properly invoked. *See, e. g., Woolums v. Simonsen*, 214 Kan. 722, 522 P.2d 1321 (1974).

Such circumstances exist here. Plaintiff's decision whether to persist with her action in federal court may itself depend on the ultimate decision in the present case. If defendant should be still entitled to a statutory lien against any proceeds plaintiff recovers against the manufacturer, plaintiff may decide not to make the investment necessary to pursue her federal action, especially if the amount she may reasonably expect to recover will be largely consumed by the lien. In the circumstances, it was not error for the trial court to hear and determine plaintiff's action for a declaratory judgment.

## II.

Appellant argues that any statutory lien created by section 68 in favor of Aetna was effectively terminated by the lump sum settlement and release agreement entered into by the parties. She contends that this is evident from her approved petitions for the lump sum settlement which conspicuously state that the settlement is a "final settlement" and from the release signed by her in which she relinquishes all rights and claims she has against Bar Harbor Airlines, its successors and assigns. Plaintiff argues that the settlement and release integrate the entire understanding of the parties and that the absence of any

express reservation by Aetna of its lien rights precludes it from now claiming such rights. We reject that argument and conclude that the lump sum settlement and release agreement did not result in a relinquishment by defendant, either expressly or impliedly, of its statutory lien.

The pleadings and affidavits in this case do not themselves support appellant's theory that Aetna waived or otherwise relinquished its lien rights. There was no bilateral agreement in which Aetna purported to relinquish any rights at all. By her release, appellant, as compensation claimant, purported to give up all claims and rights she had against Bar Harbor Airlines, its successors and assigns arising out of the airplane crash in which her husband was killed.

By no construction of its terms can the release be treated as supporting an express relinquishment by Aetna of its statutory lien rights. It was signed by Mrs. Connell, pursuant to section 71 of the Act[3] in consideration for a $239,000 lump sum payment on her claim for death of her husband under section 58.[4] Nothing in those statutory provisions can be construed to support a theory of waiver. Section 58 of the Act provides for the payment of benefits where the work-related injury results in death, and section 71 authorizes lump sum payments, where appropriate, in lieu of periodic payments. Section 71 also provides that on payment of a lump sum benefit the employer, and implicitly the compensation carrier, shall be entitled to a release from all further liability to the compensation beneficiary for the injury or death:

> Upon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of said injury or death and be entitled to a duly executed release; upon filing which, or other due proof of payment, the liability of such employer under any agreement, award or decree shall be discharged of record, and the employee accepting the lump sum settle-

**3.** 39 M.R.S.A. § 71 (1978).

**4.** 39 M.R.S.A. § 58 (1978).

ment shall receive no further compensation or other benefits on account of said injury or death under this Act.

While section 71 terminates the compensation beneficiary's rights under the Act upon payment of a lump sum, it does not purport to terminate any rights guaranteed to the employer or compensation carrier. There is no support in section 71 for the argument Aetna waived, or was required by statute to waive, its lien rights by negotiating a lump sum settlement with plaintiff.

The provisions of section 68 of the Act do not support plaintiff's argument. Section 68 of the Act affords the employer or his insurer which has paid compensation benefits under the Act the right to a lien against any amount recovered by the claimant in an action against a third person liable for the injury. The lien guarantees reimbursement of benefits already paid and benefits to be paid in the future. *Liberty Mutual Ins. Co. v. Weeks,* Me., 404 A.2d 1006 (1979). The lien ensures "that recovery from a third ... [person] shall be applied against compensation." *Id.* at 1012–13 (*quoting Buzynski v. Knox County,* 159 Me. 52, 59, 188 A.2d 270, 274 (1963)). The statutory arrangement serves two purposes: first, it enables the employer or carrier to shift the compensation burden to the person ultimately at fault and, second, it prevents the compensation beneficiary from recovering twice for the same injury. *Id.* at 1013; *Buzynski v. Knox County,* 159 Me. 52, 56, 188 A.2d 270, 272 (1963). To treat the lump sum settlement and unilateral release as creating a relinquishment by defendant of its statutory lien in the absence of express agreement to that effect would tend to defeat the legislative purposes in providing for the lien.

In her brief and at oral argument appellant relied heavily on two cases, namely, *Welch v. Arthur A. Fogarty, Inc.,* 157 Conn. 538, 255 A.2d 627 (1969), and *Stephenson v. Martin,* 259 N.W.2d 467 (Minn.1977). Apart from the question whether they were correctly decided, those cases are distinguishable on their facts. In *Welch,* the compensation claimant and his employer entered into

an agreement signed by both parties which provided, among other things, that "none of the parties hereafter shall have any further claims under the Workmen's Compensation Act of the State of Connecticut...." *Id.* at 545, 255 A.2d at 630. The *Stephenson* case, like *Welch,* involved a release, signed by both parties, purporting to settle completely all claims either party might have against the other. Aetna made no such express promises in the instant case when it accepted Mrs. Connell's release and made a lump sum payment in accordance with the approved settlement.

Appellant asks us to hold that such promises, though not express, should be implied from the total situation, and cites our own decision in *Butters v. Kane,* Me., 347 A.2d 602 (1975), as supporting her argument that a final settlement terminates all rights either party may have against the other even though one party has not signed the release. The *Butters* case arose out of an accident in which a snowmobile driven by Kane collided with one operated by Mr. Butters and on which Mrs. Butters was a passenger. Mrs. Butters sued Kane for damages, and Kane brought a third-party action against Mr. Butters for contribution. While the suit was pending, Kane entered into a settlement agreement with the Butterses: in consideration of $25,000, Kane received a release, signed by Mr. and Mrs. Butters, of all claims they had against him. The Court held that the release barred Kane from continuing to assert his third-party action for contribution against Mr. Butters, even though Kane had not made any express representations in or signed the release agreement.

■ *Butters v. Kane* has no application to the instant case for two reasons: *Butters* did not involve any question of the rights of the parties *inter se* in the proceeds of a separate action against a third person who is not a party to the lawsuit being settled. Second, in the present case, the rights of the claimant and the carrier, both *inter se* and against the third person, are created by statutes embodying legislative purposes that may not be disregarded; specifically

**412**

the purposes, referred to in the discussion above, of section 68 of the Workers' Compensation Act. Accordingly, we hold that, absent fraud or misrepresentation, a compensation carrier that pays benefits to a claimant under an approved lump sum settlement pursuant to section 71 does not thereby relinquish its statutory right to a lien under section 68 unless it expressly agrees to do so. *See Soper v. St. Regis Paper Co.*, Me., 411 A.2d 1004 (1980).

### III.

Plaintiff contends that in deciding the motions for summary judgment the trial justice improperly considered the affidavits of Aetna's claims representative and attorney, in which they described their intention with respect to lien and subrogation rights at the time of the lump sum settlement. Mrs. Connell argues that it was a violation of the parol evidence rule to permit the introduction of those affidavits because they contradict an otherwise totally integrated, unambiguous release agreement.

Although parol evidence is inadmissible to vary or contradict the terms of an integrated, unambiguous written agreement, application of the rule requires an initial determination that the writing was intended by the parties to integrate their understandings with respect to the subject matter. *Interstate Indus. Uniform Rental Service, Inc. v. F. R. Lepage Bakery, Inc.*, Me., 413 A.2d 516 (1980). The understandings of the parties at the time of entering the agreement are therefore relevant to determining the extent of integration. *Id.* at 519. Hence, it was not error to admit the affidavits of Aetna's claims representative and attorney.

No other issues raised by appellant require the attention of this Court.

The entry is:

Judgment affirmed.

All concurring.