2002 ME 144

**Sharon McKEEMAN**

v.

**CIANBRO CORP. et al.**

No. Cum–01–539.

Supreme Judicial Court of Maine.

Argued: April 3, 2002.
Decided: Aug. 27, 2002.

Alexander F. McCann, Esq. (orally), James J. MacAdam, Portland, for plaintiff.

Thomas V. Laprade, Esq. (orally), Lambert Coffin, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Sharon McKeeman appeals from the judgment of the Superior Court (Cumberland County, *Mills, J.*) determining the amount of workers' compensation death benefits that she must repay to S.D. Warren Company as a result of her settlement with a third party. Sharon contends that the court erred in calculating S.D. Warren's proportionate share of the costs of her recovery. We vacate the judgment and remand for further findings.

## I. BACKGROUND

[¶ 2] The parties stipulated to the following facts. In 1996, Fred McKeeman was an employee of S.D. Warren Company when he died in a work-related accident. His wife, Sharon, and son, Patrick, then began receiving workers' compensation death benefits from S.D. Warren pursuant to 39–A M.R.S.A. § 215 (2001).[1] In 1998, Sharon filed a complaint against third party Cianbro Corporation, among others, for negligence and breach of implied and express warranties in connection with Fred's death. Sharon reached a settlement with Cianbro for a present value amount of $970,000. By agreement, Sharon's counsel was entitled to a contingent fee of .one-third of the settlement, totalling $323,333. Sharon was also responsible for $60,195 in other costs and expenses.

[¶ 3] Following completion of Sharon's settlement with Cianbro, S.D. Warren ceased making payments to Sharon. By that time, S.D. Warren had paid Sharon $107,616 in weekly compensation payments, and $4000 in funeral expenses. In addition, S.D. Warren incurred $7500 in costs in assisting Sharon's litigation of her

---

1. Section 215 provides:

    1. Death of employee. If death results from the injury of an employee, the employer shall pay or cause to be paid to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a weekly payment equal to 80% of the employee's after-tax average weekly wage, but not more than the maximum benefit under section 211, for a period of 500 weeks from the date of death.

    39–A M.R.S.A. § 215(1) (2001).

third-party claim.[2]

[¶ 4] S.D. Warren intervened in Sharon's action against Cianbro, and moved to enforce a workers' compensation lien against Sharon pursuant to 39–A M.R.S.A. § 107 (2001).[3] The court ordered Sharon to repay S.D. Warren the amount of $71,744, but did not elaborate on its method of calculating that amount. Sharon's subsequent motion for findings of fact and conclusions of law was denied. This appeal followed.

## II. DISCUSSION

[¶ 5] Pursuant to section 215, an employer must make death benefit payments to surviving dependents for 500 weeks from the date of death. 39–A M.R.S.A. § 215(1) (2001). In this case, S.D. Warren had made 228 payments when Sharon settled with Cianbro; the settlement therefore relieved S.D. Warren of 272 future payments totalling $124,801. Upon settlement, section 107 entitles the employer to a lien for the "value of compensation paid" and recovered, and requires the employee to "repay to the employer … the benefits paid by the employer under this Act, less the employer's proportionate share of cost of collection, including reasonable attorney's fees." 39–A M.R.S.A. § 107 (2001).

[¶ 6] The issue before us in this case is how to determine S.D. Warren's proportionate share of the costs of the settlement. Sharon contends that S.D. Warren is required to pay its proportionate share of recovering not just the amounts it had already paid, but also the amount of future liability from which it has been relieved. She calculates, therefore, that in addition to paying attorney fees for the recovery of the amounts paid during the first 228 weeks, S.D. Warren should also be required to pay proportionate attorney fees for recovering the amounts that S.D. Warren would have paid during the remaining 272 weeks had Sharon not recovered from Cianbro.

[¶ 7] The correct method of calculating an employer's proportionate share of the costs of an employee's settlement with a third party pursuant to section 107 presents an issue of first impression. The interpretation of section 107 is a matter of law that we review de novo. *Harding v. Wal–Mart Stores, Inc.*, 2001 ME 13, ¶ 9, 765 A.2d 73, 75.

---

**2.** S.D. Warren also paid $10,581 in its own attorney fees relating to Fred's death. These fees, however, are not part of the costs of Sharon's litigation of her third-party claim against Cianbro.

**3.** Section 107 provides:
When an injury or death for which compensation or medical benefits are payable under this Act is sustained under circumstances creating in some person other than the employer a legal liability to pay damages, the injured employee may, at the employee's option, either claim the compensation and benefits or obtain damages from or proceed at law against that other person to recover damages.
If the injured employee elects to claim compensation and benefits under this Act,

any employer having paid the compensation or benefits or having become liable for compensation or benefits under any compensation payment scheme has a lien for the value of compensation paid on any damages subsequently recovered against the 3rd person liable for the injury. . . .
If the employee or the employee's beneficiary recovers damages from a 3rd person, the employee shall repay the employer, out of the recovery against the 3rd person, the benefits paid by the employer under this Act, less the employer's proportionate share of cost of collection, including reasonable attorney's fees.
. . .
39–A M.R.S.A. § 107 (2001).

[¶ 8] We look first to the plain language of section 107 to discern the legislative intent underlying its enactment. We note that the Legislature has not disclosed the intent underlying section 107, and the Workers' Compensation Board has not had occasion to clarify it. *Russell v. Russell's Appliance Serv.,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d 67, 71 n. 3. S.D. Warren contends that because the language of section 107 entitles an employer to collect only "benefits paid," rather than "benefits paid and *payable,*" the employer has a duty to pay its portion of attorney fees and expenses only to the extent of the benefits already paid. *See* 39–A M.R.S.A. § 107. This view is supported by neither the plain language of section 107 nor by our prior decisions.

[¶ 9] The plain language of section 107 is more accurately read in two parts. The first part requires: "the employee shall repay ... the benefits paid by the employer," and therefore merely describes the employer's right of reimbursement of benefits paid upon the employee's settlement with a third party. *Id.* The second part of section 107 requires that the employer pay its "proportionate share of cost of collection," but is otherwise silent on how to calculate that proportionate share. *Id.* Thus, the plain language of section 107 indicates the employer's right of reimbursement of amounts paid, but does not guide our inquiry into the calculation of the employer's proportionate share of costs.

[¶ 10] It has long been established in Maine, however, that section 107 entitles employers to both a lien on benefits already paid *and* to a right to offset any future liability against the settlement amount netted by the employee. In *Liberty Mutual Insurance Co. v. Weeks,* 404 A.2d 1006 (Me.1979), the employee, Weeks, was injured in a work-related car accident.

*Id.* at 1008. The employer's insurer, Liberty Mutual, then began making weekly workers' compensation benefits to Weeks. *Id.* Some time later, Weeks reached a settlement agreement with the third parties actually responsible for the accident. *Id.* Pursuant to the predecessor statute to section 107, identical in language, Liberty Mutual obtained a lien on the amounts it had already paid Weeks. *Id.* We determined that, notwithstanding the language of the statute entitling the employer only to "benefits paid," the employer "is entitled as well to set off against its liability for future compensation payments the difference between the amount paid as compensation after the disposition of that action and the [employee's] net recovery from it." *Id.* at 1013; *see also Dionne v. Libby–Owens Ford Co.,* 565 A.2d 657, 658 (Me.1989). This right of setoff was necessarily read into the statutory scheme in order to prevent the employee's double recovery—from both the settlement with the third party at fault, and the employer through its continuing workers' compensation liability to the employee independent of the settlement. *Id.*

[¶ 11] Following *Weeks,* in *Overend v. Elan I Corp.,* 441 A.2d 311 (Me.1982), we held that an employee could proceed against his employer for workers' compensation benefits even though he had already settled his claim against a third-party tortfeasor. *Id.* at 312. Thus, in *Overend* we explicitly recognized the employer's continuing liability to the employee independent of settlement. *Id.* We also reiterated in *Overend* that "any award conferred under the [Workers' Compensation] Act [may] be set off by the net amount of the settlement." *Id.*

■ [¶ 12] The import of *Weeks* and *Overend* is this: the employer is liable for death or disability payments for the entire duration prescribed by statute—in this

case 500 weeks—regardless of the existence or extent of the employee's settlement with a third party—subject to a setoff commensurate with the settlement. *See* 39–A M.R.S.A. §§ 107, 215. Because the settlement signifies only the extent of the third party's liability, the employer's liability may extend well beyond that. If the amount of settlement obtained by the employee is greater than the present value of future payments the employer would have paid, the employer's payments are entirely suspended for the duration of the period of liability. If, however, the amount of settlement obtained by the employee is not sufficient to cover the amount of future payments for which the employer would eventually become liable, then the employer's liability is suspended only to the extent of the settlement amount. The employer again becomes liable for continuing payments once the amount of the settlement received by the employee is depleted based on the weekly amount the employer would have paid the employee but for the settlement. In this way, all three goals of section 107 are fulfilled: (1) the injured employee gets the benefit of the greater of the tort recovery or the workers' compensation award, (2) the employer is relieved of the compensation burden caused by the third party, and (3) the employee gets no double recovery and the third party tortfeasor gets no immunity at the expense of the employer. *See Weeks,* 404 A.2d at 1012–13; *Overend,* 441 A.2d at 314.

[¶ 13] Because of this right of setoff, the benefit that inures to the employer upon the employee's settlement with a third party includes *both* reimbursement of amounts paid *and* the relief of future amounts payable to the extent of the settlement amount netted by the employee. In this case, Sharon's settlement with Cianbro exceeds the amount of benefits for which S.D. Warren would be liable if there had been no settlement, and S.D. Warren's payments are therefore entirely suspended. S.D. Warren has benefitted by the settlement in the amount of the $111,616[4] already paid plus the full amount of payments suspended due to the settlement, allegedly totalling $124,801 according to Sharon. Because the employer's rights in the settlement include not only past amounts paid, but also future benefits relieved, the employer also has a duty to pay the corresponding proportionate share of attorney fees for the present value of the entire benefit it receives.

[¶ 14] Courts in other jurisdictions have also taken this approach. At least twenty-seven other jurisdictions have encountered this precise issue. Of those, a majority has taken the approach urged by Sharon, concluding that because "the employer's right of reimbursement extends not only to past compensation paid but to future liability, ... the employer's equitable share of the fees and costs involved in the employee's third-party recovery should be calculated on the employer's total potential liability, rather than on past benefits actually paid." ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 117.02(1)(e) (2001) (citations omitted); *see, e.g., Takahashi v. Loomis*

---

4.  S.D. Warren is entitled to recover the full amount of "benefits paid." *See* 39–A M.R.S.A. § 107. Here, the parties stipulated that S.D. Warren paid Sharon $107,616 for 228 weeks of death benefits. In addition, by its plain language, "benefits paid" also includes the benefit to Sharon of having S.D. Warren pay for funeral expenses. *Id.; see*

ARTHUR LARSON & LEX K. LARSON, WORKERS' COMPENSATION LAW § 117.03 (2001) (citing *Myers v. Philadelphia Daily News,* 168 Pa.Super. 561, 79 A.2d 787 (1951)). S.D. Warren paid $4000 in connection with Fred McKeeman's funeral expenses. Thus, the benefits already paid by S.D. Warren total $111,616.

*Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980); *Stone v. Fluid Air Components of Alaska*, 990 P.2d 621, 625 (Alaska 1999); *Cameron v. Minidoka County Highway Dist.*, 125 Idaho 801, 874 P.2d 1108, 1111 (1994); *Zuber v. Ill. Power Co.*, 135 Ill.2d 407, 142 Ill.Dec. 871, 553 N.E.2d 385, 389 (1990); *Jones v. Melroe Div., Clark Equip. Co.*, 102 Ill.App.3d 1103, 58 Ill.Dec. 934, 430 N.E.2d 1385, 1389 (1981); *Lemery v. Buffalo Airways, Inc.*, 14 Kan.App.2d 301, 789 P.2d 1176, 1181–82 (1990); *Hunter v. Midwest Coast Trans., Inc.*, 400 Mass. 779, 511 N.E.2d 615, 618 (1987); *Cronen v. Wegdahl Coop. Elevator Ass'n*, 278 N.W.2d 102, 105 (Minn.1979); *City of Austin v. Janowski*, 825 S.W.2d 786, 791 (Tex.App. 1992). In fact, we are aware of only one jurisdiction, Missouri, that has adopted the approach urged by S.D. Warren, that the employer is responsible only for attorney fees based on the amount of compensation already paid. *See Ruediger v. Kallmeyer Bros. Serv.*, 501 S.W.2d 56, 59–60 (Mo. 1973).

[¶ 15] We are also mindful that we must interpret section 107 to avoid "results that are absurd, inconsistent, unreasonable or illogical." *State v. Maizeroi*, 2000 ME 187, ¶ 14, 760 A.2d 638, 643 (quoting *Fraser v. Barton*, 628 A.2d 146, 148 (Me.1993)). As courts in other jurisdictions have concluded, calculating proportionate costs based only on past benefits paid would lead to illogical results. First, to permit an employer to pay only a proportionate share of recovering past benefits paid would result in the employer receiving a benefit without any corresponding liability for that benefit. *See Stone*, 990 P.2d at 624–25. To allow S.D. Warren to "enjoy the benefits of [Sharon's] acts and not to require it to pay a portion of the expenses is a very unlikely

determination of the legislative intent." *Lemery*, 789 P.2d at 1181.

[¶ 16] Furthermore, S.D. Warren's approach would make the employer's share of costs entirely dependent on the time of settlement. The earlier the settlement, the less contribution to costs from the employer because the fewer benefits already paid. In fact, applying S.D. Warren's approach, if the employee settles with the third party before any compensation benefits have been paid by the employer, the employee would be responsible for all of the costs of settlement. The employee's incentive would therefore be to settle at the latest possible time, preferably after the employer has paid all workers' compensation benefits owed, or not to settle at all. *See Zuber*, 142 Ill.Dec. 871, 553 N.E.2d at 389; *Cronen*, 278 N.W.2d at 105; *Lemery*, 789 P.2d at 1181. In that case, the employer would have to seek the settlement with the third party, as section 107 permits an employer to do, and would in any event be responsible for its share of fees and costs. These possibilities run contrary to our policy favoring "expeditious settlement." *See Overend*, 441 A.2d at 314.

[¶ 17] We conclude, therefore, that an employer's proportionate share of fees and costs upon an employee's settlement with a third party should be calculated with reference both to past benefits paid and future liability relieved, to the extent that it can be determined.[5]

■ [¶ 18] We turn, then, to the actual method of calculating "proportionate" costs. "Proportion" means "the relation of one part to another or to the whole with respect to magnitude, quantity, or degree." WEBSTER'S SEVENTH NEW COLLE-

---

5. We recognize that, unlike the definite nature of death benefits payments as in this case, the determination of future liability to

employers will often be a difficult process requiring a significant factual inquiry.

GIATE DICTIONARY 683 (7th Ed.1970). Proportion thus refers to a ratio, here the ratio of the employer's benefit to the total settlement received by Sharon. S.D. Warren's proportionate share should therefore be calculated by comparing S.D. Warren's full benefit from the settlement, which is yet to be determined by the Superior Court, with the total value of the settlement, $970,000.[6]

The entry is:

Judgment of the Superior Court is vacated and remanded for a determination of S.D. Warren's proportionate share of settlement costs based on past amounts paid and the present value of future liability relieved.

---

**6.** The parties in this case, however, appear to have agreed that S.D. Warren's share of costs should be based on the one-third fee agreement between Sharon and her attorney. We leave it to the Superior Court to determine if such an arrangement comports with the "proportionate" requirement of the statute.